**Sharon M. SAWICKI, Plaintiff,**

v.

**AMERICAN PLASTIC TOYS, INC., a Michigan Corporation and Kenneth N. Hebert, jointly and severally, Defendants.**

**No. 00–10147.**

United States District Court, E.D. Michigan, Northern Division.

July 11, 2001.

Ronald W. Chapman, Ann E. Erickson, Kimberly A. Koester, Chapman Hardin, Bloomfield Hills, MI, for plaintiff.

Robert M. Vercruysse, Bernice M. McReynolds, Vercruysse, Metz, Bingham Farms, MI, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LAWSON, District Judge.

The plaintiff, Sharon M. Sawicki, has filed an action under Title VII of the Civil Rights Act of 1964 against her former employer, American Plastic Toys, Inc., and her immediate supervisor at that establishment, Kenneth N. Hebert, claiming that she was improperly fired from her job in retaliation for protesting the alleged sexual harassment of co-workers and subordinates by another employee. The plaintiff's complaint includes claims under Title VII, as noted above, and under the Michigan Elliott–Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101, et seq. (MELCRA), as well as a claim for violation of public policy. The defendants have filed a motion for summary judgment, claiming that the plaintiff has failed to offer sufficient evidence establishing a *prima facie* case under any of her theories. The parties have fully briefed the issues raised in the motion and the Court entertained oral argument of the parties through their respective counsel in open court on June 18, 2001. At oral argument, the parties agreed that the plaintiff would withdraw her claim based on a violation of public policy. Because the plaintiff has failed to offer sufficient evidence establishing a genuine factual issue as to whether she engaged in a protected activity, and whether the adverse job action (termination) was causally related to an alleged protected activity, the Court will grant the defendant's motion for summary judgment on the Title VII claim. Because the claim over which this Court had original jurisdiction is dismissed, the Court expresses no opinion as to the merits of the claim plaintiff has brought under the MELCRA, and

dismisses that claim without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## I.

The plaintiff was formerly employed as a group leader by defendant American Plastic Toys, Inc. ("APT") at its manufacturing facility in Rose City, Michigan from August 26, 1992 until October 16, 1999. On or about September 7, 1998, four female employees at the APT facility presented the plaintiff with a memorandum ("complaint") wherein they alleged that Curtis Taylor ("Taylor"), the third shift supervisor at the plant, was sexually harassing them, and that they had already discussed the matter with an attorney. Because the plaintiff owned a typewriter at her house, the plaintiff typed up the complaint, the subordinates signed the complaint, and the plaintiff delivered the complaint to the defendant, Kenneth Hebert ("Hebert"), who was the plant manager. The plaintiff also mailed a copy of the complaint to Michelle Hrabovsky, the human resources manager for APT. In response, APT initiated an investigation into the allegations of harassment by Taylor.

The plaintiff was interviewed regarding her knowledge of Taylor's conduct and could only state that she witnessed one incident where Taylor seemed to stare at one of the complainants. She could offer no further first-hand knowledge of Taylor's misconduct. APT interviewed other employees as well and suspended Taylor pending the results of the investigation. The investigation concluded, and on September 15, 1999 Taylor's employment was terminated.

Thereafter, APT received complaints from four of the plaintiff's subordinates, three of whom had been laid off, which accused the plaintiff of objectionable behavior including the use of vulgar language and threatening comments. On or about September 17, 1999, defendant Hebert

confronted the plaintiff about her alleged misconduct. Plaintiff denied the misconduct, and now claims that the four employees who complained about her were friends of Taylor and conspired to get the plaintiff fired. On October 14, 1999, plaintiff was suspended with pay pending an investigation of her behavior. APT conducted interviews with several employees and learned that the plaintiff allegedly changed other employees' time cards, made vulgar comments to co-workers including a statement to a female employee asserting that the employee participated in a sexual act on the plant floor, and threatened a subordinate that she should "not [ ] mess with the employees on third shift. . . ."

Following the investigation, APT fired the plaintiff, as it had Taylor, concluding that she had violated Rules 3 and 10 of APT's General Work Rules, which are found in the employee handbook. These rules provide:

> Discipline up to and including discharge may be imposed in the discretion of management, for any of the following: . . . 3) fighting or inciting others to fight on company property; assaulting, threatening, intimidating, coercing, or interfering with fellow employees or supervisors . . . . 10) Vulgarity—cursing in an obscene or unnecessary manner."

APT also concluded that the plaintiff violated the Harassment Prohibition Policy which provided in pertinent part that "[a]ll employees must avoid offensive or inappropriate behavior and are responsible for assuring that the workplace is free from harassment and discrimination at all times."

The plaintiff subsequently brought this action alleging unlawful retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* (Count I), the MELCRA (Count II), and in violation of public policy (Count III). She asserts that

her act of delivering her subordinates' complaint to management constituted "opposition" to the defendants' discriminatory employment practice, *i.e.*, sexual harassment. She alleges that the defendants retaliated against her for opposing Taylor's harassment of the employees. Her assertion is based on an exchange between her and her supervisor, Kenneth Hebert. When the plaintiff delivered her subordinates' complaint to him, she allegedly mentioned that an attorney had been consulted. Hebert allegedly responded that "[t]hat was the only mistake you made." Plaintiff's dep. at 123. Plaintiff made no further comments or specified the purpose for contacting an attorney.

The defendants contend that the plaintiff did not clearly assert her opposition to the harassment of her subordinates, but merely delivered the complaint of her subordinates to management and, consequently, plaintiff did not engage in protected activity. This is apparent, defendant alleges, from the deposition testimony of the plaintiff where she was asked if she had witnessed any sexual harassment, to which she answered, "No I didn't." Plaintiff's dep. at 60. She was also asked if what she did was "essentially deliver [the complaint] to Ken Hebert so that he could take care of dealing with it, that issue." The plaintiff responded "Exactly." *Id.* Furthermore, the defendants assert that the plaintiff was properly discharged for misconduct, and the decision of APT was supported by legitimate, non-discriminatory, non-retaliatory business reasons, *i.e.*, plaintiff's acts of vulgarity, intimidation and violating APT's sexual harassment policy.

The defendants conclude, therefore, that the plaintiff did not complain to management *on behalf* of her subordinates as she claims, because the allegations of misconduct are contained in a memo to management signed by the four subordinates, not the plaintiff. Rather, the plaintiff is improperly attempting to create her own claim under Title VII by asserting that she opposed the discrimination that was alleged to have taken place by delivering the complaint of her subordinates to management after she allegedly spoke with an attorney.

## II.

### A.

A motion for summary judgment under Fed.R.Civ.P. 56 presumes the absence of a genuine issue of material fact for trial. A party opposing a motion for summary judgment must show by affidavits, depositions or other factual material that there is "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

A party may support a motion for summary judgment by demonstrating that an opposite party, after sufficient opportunity for discovery, is unable to meet her burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may not merely rely upon the pleadings to oppose a motion for summary judgment but must come forward with affirmative evidence in the form of materials described in Rule 56(c) to establish a genuine issue on a material fact. *Id.* at 324, 106 S.Ct. 2548. Even in complex cases, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electrical Industrial Co., Ltd.*

*v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–81 (6th Cir. 1989).

### B.

It is well established that in order to survive a motion for summary judgment, the burden is on the Title VII employment discrimination plaintiff to establish a *prima facie* case of discrimination. If the plaintiff successfully makes out a *prima facie* case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision in order to rebut the *prima facie* case. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the employer offers such evidence, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Ang v. Procter and Gamble Co.,* 932 F.2d 540, 548 (6th Cir.1991). The burden of proof of discrimination throughout is on the plaintiff. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Section 704 of Title VII of the Civil Rights Act of 1964 provides in part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a)

■ To make out a *prima facie* case of retaliation, a plaintiff must demonstrate: 1) that she engaged in activity protected by Title VII; 2) that the defendant knew of this exercise of her protected rights; 3) that the defendant consequently took an employment action adverse to plaintiff, and 4) that there is a causal connection between the protected activity and the adverse employment action. *Strouss v. Michigan Department of Corrections,* 250 F.3d 336, 342 (6th Cir.2001), *citing Fenton v. HiSAN, Inc.,* 174 F.3d 827, 831 (6th Cir.1999).

### 1.

■ Section 704(a) protects two distinct forms of conduct by an employee from employer retaliation: making a charge or complaint or participating in an investigation or proceeding; and opposing unlawful discrimination or harassment.

The distinction between employee activities protected by the participation clause and those protected by the opposition clause is significant because federal courts have generally granted less protection for opposition than for participation in enforcement proceedings.

*Booker v. Brown & Williamson, Inc.,* 879 F.2d 1304, 1312 (6th Cir.1989) [1] The Court

---

**1.** The appeal in *Booker* concerned plaintiff's claim brought under the MELCRA only. However, the Court analyzed the retaliation cause of action under an analogous line of federal decisions construing parallel provisions of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, observing that "Michigan courts clearly look to Title VII in resolving questions arising under Elliot–Larsen" and "[s]ince Elliot–Larsen's anti-retaliation provision tracks section 704(a) of Title VII, ... we conclude that the [Michigan statute] should be construed in the same manner." *Booker,* 879 F.2d at 1311–12.

must examine the evidence to determine if plaintiff engaged in *either* form of protected behavior, and only then can it determine the level of protection which the law affords.

The Court of Appeals has provided guidance in this determination by utilizing a literal construction of the statute:

> In our view, the language of the statute should be read literally, and, therefore, the instigation of proceedings leading to the filing of a complaint or a charge, including "a visit to a government agency to inquire about filing a charge," *Polk [v. Yellow Freight System, Inc.]*, 801 F.2d at 200, is a prerequisite to protection under the participation clause.
>
> The purpose of the statute is to protect access to the machinery available to seek redress for civil rights violations and to protect the operation of that machinery once it has been engaged. Accordingly, any activity by the employee prior to the instigation of statutory proceedings is to be considered pursuant to the opposition clause.

*Booker*, 879 F.2d at 1313.

■ There is no evidence that the plaintiff in this case participated in any way in engaging the formal machinery of government to seek redress for the sexual harassment alleged by her coworkers. The Court concludes, therefore, that the plaintiff has failed to state a retaliation claim under the "participation" prong of the statute. Thus, plaintiff can satisfy the first element of the *prima facie* case only if her conduct falls within the "opposition clause" of section 704(a).

### 2.

■ Not all "opposition" is protected. For instance, activity which interferes with job performance, violates legitimate work rules, disrupts the employment environment, or interferes with achieving the proper goals of a business may be disciplined by an employer without running afoul of section 704(a)'s proscriptions. *See, e.g., Holden v. Owens–Illinois, Inc.*, 793 F.2d 745, 751–52 (6th Cir.), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 704 (1986), *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir.1985). On the other hand, to fall within section 704(a)'s protection, the activity must constitute actual opposition to an employer's practice that violates Title VII. *Holden*, 793 F.2d at 748–49. *See also, Little v. United Technologies, Carrier Transicold Division*, 103 F.3d 956 (11th Cir.1997).

Thus, the Court in *Booker* noted:

> An employee may not invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination. In our view, such would constitute an intolerable intrusion into the workplace.

*Booker*, 879 F.2d at 1313.

■ Plaintiff has alleged that she was fired in retaliation for a protected activity, *i.e.*, her opposition to the sexual harassment of her subordinates; therefore, she must offer some evidence that she actually *opposed* the misconduct at APT. The record before the Court, however, fails to demonstrate any such opposition. Rather, the plaintiff's claims rest on misleading assertions.

For example, plaintiff's counsel writes that the plaintiff "*brought a claim* of sexual harassment *on the behalf of* other employees to a management official—Defendant Hebert, the plant manager. And a *complaint of sexual harassment* was sufficient to show that [the plaintiff] was protesting employment discrimination against other employees." Plaintiff's Brief at 9 (emphasis added). However, according to

the evidence before the Court, the plaintiff did not "bring" a claim of sexual harassment on behalf of other employees. The record indicates that she *delivered* a claim of sexual harassment to management and human resources, a claim which was *brought* by her subordinates. The record regarding the complaint, or memorandum, is characterized by the plaintiff's own deposition testimony:

Q And who was this memorandum written by? . . .

A Holly Miller wrote it and I typed it, because I had the typewriter at my house. . . .

Q Why didn't you sign that document as well?

A Because I wasn't being sexually harassed. . . .

Q [Y]ou brought it to Ken Hebert and gave it to him; is that right?

A Yes. . . . I asked Kenny if I could talk to him in private. . . . And Kenny looked at this and he says, well, this doesn't tell me anything. He says, I have to talk to the girls. And I told him that Holly and Ramona were waiting to talk to him. I said the other two couldn't stay after work. . . . [He got some] paper and pencil, and then we started walking to the back end of the shop where the break area was where Holly and Ramona were waiting to talk to him. . . .

Q When you were talking to Ken Hebert before you two walked over to meet the other two women, did you tell Ken Hebert that you would be willing to sit in as a witness?

A Yes.

Q Did you suggest that and offer that to him?

A Yes, I told him I would.

Q He didn't ask you to; right?

A No.

Q You just offered to do that on your own.

A Yes. . . .

Q So what you did is essentially deliver that memo to Ken Hebert so that he could take care of dealing with it, that issue.

A Exactly.

Plaintiff's dep. at 55–60.

The plaintiff relies on the case of *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989), for the proposition that "voicing internal protests to discrimination is sufficient to invoke protection against retaliation," Plaintiff's Brief at 9, which is true enough. However, in that case, the plaintiff brought an action on her own behalf for race discrimination after communicating numerous complaints to management, both verbal and written. The Court merely prefaced its analysis by recognizing that Title VII actions are not limited to formal complaints but extend to informal verbal complaints and utilization of internal grievance procedures. *Id.* There is no evidence in this case that plaintiff did either. The plaintiff's reliance on *Rollins* is misplaced.

The plaintiff also relies on *Johnson v. Booker T. Washington Broadcasting Svc. Inc.*, 234 F.3d 501 (11th Cir.2000), asserting that Title VII extends protection to individuals that complain to management about sexual harassment. The assertion is accurate; however, the plaintiff in that case filed a complaint with the EEOC on her own behalf, so the holding is of no consequence to the issue before the Court; that is, whether the plaintiff expressed opposition in any form to management.

The plaintiff concludes her argument that she has satisfied the first prong of a prima facie case for a Title VII violation by asserting that her "filing of a complaint of sexual harassment on behalf of the women working on her shift with the plant manag-

er was [therefore] a protected activity." Plaintiff's Brief at 10. However, the plaintiff has failed to demonstrate that she in fact acted "on behalf of" her subordinates, and thus how she "opposed" a violation of Title VII. Such opposition could have taken the form of a verbal complaint *by the plaintiff* to management claiming that Taylor engaged in the sexual harassment of her subordinates; she might have signed the complaint before she delivered it to Hebert and the human resources department manager; she might have asserted that she contacted an attorney on behalf of her subordinates to explore the viability of a lawsuit or filing a claim with the EEOC. There is no evidence that plaintiff engaged in any such conduct. Instead, the plaintiff relies solely on the mere delivery of her subordinates' complaint to management to establish her own opposition to the misconduct, and then argues that her "opposition" was protected activity.

 Plaintiff also argues that the reference to contacting an attorney and Hebert's alleged reaction to that statement provides a basis to find "opposition." It is unclear from the record that plaintiff is claiming that *she* contacted an attorney herself. At oral argument, plaintiff's counsel conceded that plaintiff had no cause to seek representation prior to the time she presented her subordinates' complaint to Hebert. Further, the memo from plaintiff's subordinates asserted that the *subordinates* had *already* met with an attorney. None of these facts, however, demonstrate *plaintiff's* opposition to the alleged discrimination at the plant. As previously noted, "a vague charge of discrimination ... is insufficient to constitute opposition to an unlawful employment practice." *Booker,* 879 F.2d at 1313. The complaint by the subordinates was not vague; however, the plaintiff's "opposition" as expressed by the act of delivery of the complaint is certainly vague, and plaintiff has not proffered any authority which might suggest that *delivery* constitutes an *expression of opposition* to an employment practice.

Plaintiff's reliance on *Lewis v. Quaker Chemical Corp.,* Nos. 99–5405, 99–5482, 2000 WL 1234356 (6th Cir. Aug.24, 2000), an unpublished opinion, for the proposition that her reference to consulting counsel creates a fact issue is likewise misplaced. In that case, the plaintiff filed an action for retaliatory discharge under Kentucky law. The case proceeded to trial and the plaintiff received a favorable judgment. The defendant appealed the judgment challenging the sufficiency of evidence. The Court of Appeals applied the standard of review applicable in Kentucky because jurisdiction was based on diversity. The Court stated that the defendant's motion for judgment notwithstanding verdict "should be granted only if there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ." *Id.* at *5. The defendant argued that the plaintiff "did not engage in protected activity by merely making vague threats of litigation." *Id.* at *8. However, the Court found that the plaintiff's threat of litigation was not vague as evidenced by the defendant's reaction to the threat. The defendant sent a human resources manager to meet with the plaintiff and to determine what steps could be taken to avoid litigation. Terms were discussed, and the manager drafted a report in which she referenced plaintiff's potential litigation and listed the plaintiff's specific demands if plaintiff were to refrain from filing an action. The Court held that the defendant could not deny that it was clearly aware of the plaintiff's intent to file an action. *Id.* at *8.

In the instant case, the plaintiff did not specify that *she* intended to file suit; rather, she delivered a complaint to manage-

ment by four other women and informed management that an attorney had been contacted. In contrast to the facts in *Lewis*, it could not have been clear to management that the plaintiff intended to file suit on behalf of her subordinates, or that she personally opposed the misconduct. It was plaintiff's duty as a supervisor who was approached by her subordinates with a complaint to take action, investigate or send the complaint up the line of authority. That conduct, however, cannot constitute "opposition" on this record.

### C.

■ The defendants concede that plaintiff's discharge constitutes an adverse employment action taken by the defendant, APT. Therefore, with respect to APT, the third element of plaintiff's prima facie case has been established. Defendant Hebert, however, asserts that the case against him should be dismissed pursuant to the holding in *Wathen v. General Elec. Corp.*, 115 F.3d 400 (6th Cir.1997). In that case, the Court held that individual supervisors who do not otherwise qualify as "employers" may not be held liable under Title VII. *Id.* at 405. The plaintiff responds by citing *Comiskey v. Automotive Industry Action Group*, 40 F.Supp.2d 877 (E.D.Mich.1999), for the proposition that under Michigan law, "if a person has responsibility for making personnel decisions for the employer, he is an agent within the statutory definition of employer, and therefore, could be held individually liable under the Act." *Id.* at 891.

Plaintiff's argument is valid only if the plaintiff can show that defendant Hebert "has responsibility for making personnel decisions." There is no evidence before the Court to establish that proposition. When asked if she knew who made the decision to terminate her, the plaintiff responded that she did not know. Although Hebert may have had "input" in the decision, APT president David Littleton asserted that he made the decision to terminate the plaintiff, and Hebert asserted that he did not make the decision. The plaintiff has offered no evidence to contradict these assertions or to create an issue of fact. Therefore, plaintiff has not established the third element of a *prima facie* case against defendant Hebert.

### D.

■ Assuming *arguendo*, that the plaintiff engaged in protected activity, the plaintiff must also establish that her opposition to the alleged Title VII violation caused the defendant to take adverse employment action against her. However, once again the plaintiff's own deposition testimony suggests that several legitimate, nondiscriminatory reasons supported APT's decision to terminate her.

Q ... [I]s it your understanding that the company received complaints about you to the extent that you were using vulgar and obscene language at work?

...

A Yes.

Q And you agree that the company received a complaint that you were telling people to not work so hard and to slow down; is that right?

A Yes.

Q And you agree that the company received a complaint that you were telling people to take longer breaks than were permissible by the company; right?

A Yes.

Q And you agree that the company received complaints that you were altering time cards; isn't that right?

A Yes.

Plaintiff's dep. at 85–86.

■ As the record demonstrates, APT certainly had a basis for discharging the plaintiff independent of an alleged expres-

sion of opposition to an employment practice. The plaintiff must therefore offer some evidence which creates a material fact issue that the proffered reasons are a pretext for the company's adverse employment action directed at the plaintiff. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000).

 First, the plaintiff argues that APT acted on the complaints against her "without adequate investigation." Plaintiff's Brief at 16. However, " 'the question is not whether the employer's reasons are *right*, but whether the employer's description of its reasons is *honest*.' Thus, arguing that the employer could have done a better investigation is irrelevant. '[A] reason honestly described but poorly founded'—so long as it has *some* basis in fact—'is not a pretext as that term is used in the law of discrimination.' " *Comiskey*, 40 F.Supp.2d at 896 (quoting *Kariotis v. Navistar International Transportation Corp.*, 131 F.3d 672, 677 (7th Cir.1997)). *See also Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557 (7th Cir.1987). In the instant case, the defendants acted on complaints received from its employees accusing the plaintiff of vulgar language, intimidation and sexual harassment. APT terminated the plaintiff pursuant to company policies forbidding such conduct. Therefore, it appears that the defendant's decision had a basis in fact as plaintiff acknowledged in her deposition testimony above.

Second, the plaintiff argues that the reasons for discharging the plaintiff did not actually motivate the discharge. She asserts that the employees that complained about her to management were actually friends of Taylor and were responding to his discharge by filing complaints against the plaintiff. The plaintiff refers the Court to one employee's comment that the discharge of Taylor was "the straw that broke the camel's back." Dep. of Alicia Bilbrey at 35. The plaintiff has failed to contradict the statements of her accusers, however, and also has failed to show that management did not have some basis in fact upon which to rely in its determination. Nor has plaintiff offered evidence of any ulterior motive of APT in firing the plaintiff.

Third, the plaintiff argues that the reasons for discharging the plaintiff were insufficient, because the conduct in which she engaged was committed by others who were not disciplined. She asserts that other employees used foul language and were not disciplined, she did not feel that she had intimidated other employees, and vulgarity and sexual innuendo were "accepted on the floor of the plant." Plaintiff directs the Court to the deposition testimony of Cheri Short and Ron Nelson. Short merely stated that many people at the plant "swear" when they "get mad." Nelson, a shop foreman, testified he had not personally disciplined anyone at the plant for swearing, and he did not hear people routinely swearing at the plant. However, neither of these witnesses cited examples of other employees engaging in the conduct of which plaintiff was accused. Furthermore, plaintiff has not offered evidence that she did not intimidate another employee. To the contrary, when the plaintiff read parts of a confidential complaint that was lodged against her by another employee at APT, the plaintiff confronted the employee, Bonnie Beldon, who was the plaintiff's subordinate, questioned Beldon twice about the contents of the letter, and when Beldon denied writing the letter, the plaintiff called her a "f* * *ing

liar." Plaintiff's dep. at 97–105. Beldon reported the incident to management. The plaintiff does not dispute these facts.

By not effectively refuting the defendant's assertions of these legitimate nondiscriminatory business reasons for terminating the plaintiff, the plaintiff has failed to establish that the defendant's reasons were pretextual. In addition, the plaintiff, as a supervisor or group leader at the plant, was held to the same standards as other employees in supervisory roles—that of following company policies and guidelines. The plaintiff was terminated for the reasons cited; Taylor was terminated for sexual harassment; and a third employee was terminated for racial discrimination. Plaintiff has failed to demonstrate that APT was selectively applying its anti-discrimination policies. Therefore, she has established neither a causal connection between protected activity and adverse employment action, nor a pretext on the part of APT.

### III.

The plaintiff has not established that she engaged in protected activity, *i.e.*, that she opposed a discriminatory practice made unlawful under Title VII of the Civil Rights Act of 1964. Nor has she offered evidence of a causal link between protected activity and her termination. The plaintiff has not, therefore, made out a *prima facie* case for retaliatory discharge under Title VII. Further, plaintiff has not effectively rebutted the defendants' legitimate nondiscriminatory reasons for discharging her. Thus, she has not raised an issue of fact that defendant's reasons were pretextual. The Court will grant the defendants' motion for summary judgment and dismiss Count I of the complaint.

The parties have agreed that the public policy cause of action will not proceed, and the Court will dismiss Count III of the complaint pursuant to the stipulation of the parties.

The case has been before this Court by way of the Court's federal question jurisdiction because Count I of the complaint arose under a federal statute. *See* 28 U.S.C. § 1331. The federal claim has now been dismissed. The MELCRA claim has been entertained by the Court on the basis of its supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). The provisions of 28 U.S.C. § 1367(c) state in relevant part:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -
>
> . . . . .
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [or]
>
> (3) the district court has dismissed all claims over which it has original jurisdiction
>
> . . . . .

Pursuant to this statute, this Court has the discretion to decline to exercise supplemental jurisdiction over state law claims in the circumstances of this case, particularly when the federal claims have been dismissed. *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279 (6th Cir. 2000). In this case, the claim which remains before this Court arises under the MELCRA. The Court believes that the courts of the State of Michigan are in the better position to determine the issues in this case. In fact, plaintiff contends that the test for determining whether plaintiff engaged in protected activity is more generous under the Michigan statute than under Title VII. *Cf. Welch v. W.R. Grace & Co.-Conn., Dearborn Division*, 1995 WL 871196 (E.D.Mich.1995), in which the Court noted that the Michigan Court of Appeals, "in direct disagreement with the

Court of Appeals for the Sixth Circuit, [determined that only a] 'mere concern . . . about possible discrimination' expressed to an employer may suffice as protected activity." *Id.* at *5 (*quoting McLemore v. Detroit Receiving Hosp. & Univ. Medical Ctr.,* 196 Mich.App. 391, 396, 493 N.W.2d 441 (1993)).

In deciding state law claims, it is the obligation of the federal district courts to apply the law of the state's highest court, or to ascertain the state law from all relevant data. *See Central Mich. Bd. of Trs. v. Employers Reinsurance Corp.,* 117 F.Supp.2d 627, 632 (E.D.Mich.2000). This Court believes that, under the circumstances of this case, the state courts of Michigan are in a better position to determine and apply the applicable law. There is especially no good reason for this Court to retain jurisdiction in this case and to engage in the endeavor of determining and applying state law when there are no federal claims remaining in this Court, discovery has been completed, and the litigation has played itself out.

The Court believes that it is more appropriate to dismiss the state law claim without prejudice and leave plaintiff the choice of seeking relief in the state court which may be in a better position to decide the questions arising under state law.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment [dkt # 23] is **GRANTED** in part. Count I of the complaint is **DISMISSED** with prejudice. Count II and III of the complaint are **DISMISSED** without prejudice.